UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MARK KELLY, | ) |
|           Plaintiff, | ) |
|           v. | ) No. 4:22-cv-00071-TWP-DML |
| DANIEL DORMAN, DAVID WRIGHT, CHRISTOPHER HANSON, and JEFF BARAN, | ) |
|           Defendants. | ) |

**ENTRY SCREENING COMPLAINT AND ORDER TO SHOW CAUSE**

On May 24, 2022, *pro se* Plaintiff Mark Kelly ("Plaintiff") initiated this civil action by filing his Complaint against Defendants Daniel Dorman, executive director for operations of the United States Nuclear Regulatory Commission ("NRC"); David Wright, chairman of NRC; Christopher Hanson, commissioner of NRC; and Jeff Baran, commissioner of NRC (collectively, "Defendants") (Filing No. 1). This matter is now before the Court for screening.

**I.      Screening**

The Seventh Circuit has explained,

> [D]istrict courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status. 28 U.S.C. § 1915(e)(2)(B); *McGore*, 114 F.3d at 608. The district court may screen the complaint prior to service on the defendants, and must dismiss the complaint if it fails to state a claim. 28 U.S.C. § 1915(e) (2)(B).

*Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999).

District courts have an obligation under 28 U.S.C. § 1915(e)(2)(B) to screen complaints before service on the defendant and must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such

relief. In determining whether the complaint states a claim, the court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal under federal pleading standards,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that might be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

## II.  Plaintiff's Complaint

In his 55-page Complaint, *pro se* Plaintiff chronicles the long history of his interactions with the NRC and his attempts to hold the NRC accountable in fulfilling its mission to ensure the safe use of radioactive material for beneficial civilian purposes while protecting the people and the environment. Plaintiff alleges that "[t]he NRC is responsible for promulgating and enforcing laws of the United States that impact the safety of nuclear industry. NRC's regulatory authorities extend to reactors, materials and fuel products, waste transportation, storage, and disposal." (Filing No. 1 at 2–3.) Plaintiff asserts, "This Complaint does not accuse all of individuals involved of misconduct, but addresses NRC activities that collectively are illegal and have harmed Plaintiff and the public." *Id.* at 3.

Plaintiff alleges that he engaged in work in the nuclear industry and discovered various errors and false information in NRC's reports and in reports relied upon by NRC that impact safety determinations. He alleges that inaccurate and false information in reports relied upon by NRC

could influence decisions concerning nuclear designs, operations, waste handling, and accident responses that could impact public safety. He further alleges that NRC's inaccurate information harmed him and impacted public safety. *Id.* at 3–15. Plaintiff alleges, "These illegal safety determinations, NRC reports, and related NRC practices have directly and indirectly harmed Plaintiff and continue to harm Plaintiff's employability, professional standing, and his general well being." *Id.* at 4.

Plaintiff alleges that his former employer in the nuclear industry demanded that he assist in concealing errors and problems in reports, and when he refused to do so, he was threatened with the loss of his employment. Instead of engaging in dishonest conduct, and rather than experiencing the consequences of being fired, Plaintiff resigned from his employment. Before resigning from his employment as well as after he left, Plaintiff interacted with NRC multiple times in an effort to correct errors and false information in various reports. Plaintiff was met with resistance by NRC. *Id.* at 16–22.

In his Complaint, Plaintiff asserts,

> The NRC approvals of unsafe systems, introduction of unqualified authorities, and NRC tolerance of the spread of information known to be inaccurate and suspect (as described in the Original NRC Report) contributed to the misunderstandings that led to failures of the PMDA and thereby increased radiological hazards to the public and are therefore in violation of the ERA. The NRC actions and inactions influencing the PMDA failure violate 42USC2011.

(Filing No. 1 at 37.)

Plaintiff further alleges,

> When Plaintiff asked if the NRC could speculate or make those safety determinations by flipping a coin, the NRC did not respond clearly. The APA prohibits such agency decisions and safety determinations as arbitrary and unreasonable. The Safety determination deprived Plaintiff of rights and legal protections, prevented employment, interfered with his communications, and his right to due process under the law. The safety determinations are illegal under the US Constitution and under the APA.

*Id.* at 45–46. Immediately after this allegation, Plaintiff alleges, "Reliance on computer programs that could dictate evacuation, travel restrictions, food and water supplies, and other rights of citizens is illegal." *Id.* at 46.

Plaintiff contends,

> The NRC has abused its legal authority to make safety determinations by relying on speculation and inaccurate information to make those safety determinations, in violation of the ERA. The NRC used the safety determinations to deprive Plaintiff of his legal protections under the ERA and Public Policy Laws. The NRC thereby keeps the Plaintiff in jeopardy of civil legal actions like tortuous interference and criminal prosecutions such as felonies if he discloses certain information or discusses certain aspects of the Zr errors. These NRC actions are illegal under the ERA and, perhaps more importantly, support persistence and influences of known errors.

*Id.* at 48–49.

In his request for relief, Plaintiff asks the Court to order NRC to make safety determinations based on industry standards and accurate information. He asks the Court to order NRC to make determinations only after fully investigating and using accurate data. He asks the Court to order NRC to make available to the public all information it relies upon for its determinations, to communicate honestly with the public, and to keep him informed of its decisions. Plaintiff also asks the Court to order NRC to correct the errors and false information in past reports and not use false information in future reports. *Id.* at 50–53.

### III. <u>Dismissal of Plaintiff's Complaint</u>

Federal courts are courts of limited jurisdiction, not general jurisdiction, and "[n]o court may decide a case without subject-matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction. If the parties neglect the subject, a court must raise jurisdictional questions itself." *United States v. County of Cook*, 167 F.3d 381, 387 (7th Cir. 1999); *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

"Courts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). A court "must raise the issue *sua sponte* when it appears that subject matter jurisdiction is lacking." *Buethe v. Britt Airlines*, 749 F.2d 1235, 1238 (7th Cir. 1984); *see also Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 465 (7th Cir. 2015) ("federal courts are obligated to inquire into the existence of jurisdiction *sua sponte*"). "When a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 546 U.S. at 514, *quoted in Miller v. Herman*, 600 F.3d 726, 730 (7th Cir. 2010); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citations and quotation marks omitted).

Based on the allegations of the Complaint, it appears that this Court does not have jurisdiction to adjudicate Plaintiff's claim. From his allegations, it appears that Plaintiff is raising a general grievance about a government agency, and such is not a viable claim properly before a federal court. "A generally available grievance about government—claiming only harm to . . . every citizen's interest in proper application of the Constitution and laws is not considered an injury for standing purposes." *Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014) (internal citation and quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573–74 (1992) ("a plaintiff raising only a generally available grievance about

government -- claiming only harm to his and every citizen's interest in proper application of the Constitution and laws . . . -- does not state an Article III case or controversy"). Almost the entirety of the Complaint and requested relief focuses on public safety issues affecting the general citizenry, which are allegedly being ignored by the NRC.

Furthermore, the Court cannot discern from the Complaint any actions taken by the specifically-named Defendants—NRC—that harmed Plaintiff's "employability, professional standing, and his general well being." Plaintiff has not identified the Defendants' actions that caused any concrete injury to himself personally. Plaintiff must plead enough factual content to allow the Court to draw the reasonable inference that the specific Defendants are liable for the misconduct alleged to have personally injured him. Because Plaintiff has failed to state a claim upon which relief may be granted, the Complaint is subject to dismissal for lack of jurisdiction.

### IV.   Opportunity to Show Cause

Plaintiff shall have through **Friday, July 15, 2022**, by which to show cause why judgment consistent with this Entry should not issue. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013) ("Without at least an opportunity to amend or to respond to an order to show cause, an . . . applicant's case could be tossed out of court without giving the applicant any timely notice or opportunity to be heard to clarify, contest, or simply request leave to amend.").

If Plaintiff elects to file an amended complaint, he should conform to the following guidelines: (a) the amended complaint shall comply with the requirement of Rule 8 of the Federal Rules of Civil Procedure that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ," which is sufficient to provide the defendants with "fair notice" of the claim and its basis; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and quoting Fed. R. Civ. P. 8(a)(2)); (b) the

amended complaint must include a demand for the relief sought; (c) the amended complaint must identify what legal injury Plaintiff claims to have suffered and what persons are responsible for each such legal injury; and (d) the amended complaint must include the case number referenced in the caption of this Entry. The amended complaint also should demonstrate that jurisdiction is proper in this Court.

## CONCLUSION

Having screened the Complaint, the Court finds it is subject to dismissal for lack of jurisdiction. Plaintiff is granted leave to file an amended complaint by no later than **Friday, July 15, 2022**. If no amended complaint is filed by that date, this action will be dismissed for the reasons set forth above.[1]

**SO ORDERED.**

Date:   6/15/2022

*Hon. Tanya Walton Pratt, Chief Judge*
*United States District Court*
*Southern District of Indiana*

Distribution:

Mark Kelly
10955 South Fork Road
Dillsboro, IN 47018

---

[1] The same day that Plaintiff filed his Complaint, he also filed a "Motion for Leave to Submit this Complaint" (Filing No. 2) because he was unsure whether local rules permitted a complaint that is more than thirty pages. The Court **GRANTS** Plaintiff's Motion and accepts the filing of the Complaint.