UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

MARK KELLY,                               )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        No. 4:22-cv-00071-TWP-KMB
                                          )
DANIEL DORMAN,                            )
DAVID WRIGHT,                             )
CHRISTOPHER HANSON,                       )
JEFF BARAN,                               )
                                          )
                    Defendants.           )

**REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION TO AMEND COMPLAINT
AND MOTION TO ACCEPT SECOND AMENDED COMPLAINT**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed.

R. Civ. P. 72(b) for a Report and Recommendation as to the appropriate disposition of the pending

motions. As addressed below, the Magistrate Judge recommends that the District Judge **DENY**

**AS MOOT** Plaintiff's Motion to Amend Complaint, [dkt. 18], **GRANT** Plaintiff's Motion to

Accept Second Amended Complaint, [dkt. 20], and **DISMISS** Plaintiff's Second Amended

Complaint, [dkt. 20], for lack of jurisdiction.

## I. BACKGROUND

*Pro se* Plaintiff Mark Kelly initiated this lawsuit on May 24, 2022, by filing his Complaint,

[dkt. 1], against Daniel Dorman, Executive Director for Operations at the United States Regulatory

Commission ("NRC"); David Wright, Chairman of the NRC; Christopher Hanson, Commissioner

of the NRC; and Jeff Baran, Commissioner of the NRC. On June 15, 2022, the District Judge

screened and dismissed Plaintiff's Complaint for lack of jurisdiction. [Dkt. 11.] Based on the

allegations in Plaintiff's Complaint, the District Judge concluded that "Plaintiff [was] raising a

general grievance about a government agency," which is not a valid claim in federal court. [*Id.* at

5.]  The Court could not "discern from the Complaint any actions taken by the specifically-named Defendants … that harmed Plaintiff's 'employability, professional standing, and his general well being'" because he had not "identified the Defendants' actions that caused any concrete injury to" him.  [*Id.* at 6.]   Accordingly, the District Judge granted Plaintiff leave to file an amended complaint and was very clear that, if filed, an amended complaint "must include a demand for the relief sought [and] identify what legal injury Plaintiff claims to have suffered and what persons are responsible for each such legal injury ….".[1]  [*Id.* at 7.]

## II.  ANALYSIS

### A.  Plaintiff's Motion to Amend Complaint

On September 13, 2022, Plaintiff filed a Motion to Amend Complaint.  [Dkt. 18.]  Attached to this Motion, Plaintiff filed his First Amended Complaint and requested "that the Court consider the following and accept this complaint into the record in the interests of justice."  [*Id.* at 2.]  However, on November 14, 2022, Plaintiff filed a Motion to Accept Second Amended Complaint.  [Dkt. 20.]  In light of Plaintiff's Motion to Accept Second Amended Complaint, the Magistrate Judge recommends that the District Judge **DENY AS MOOT** Plaintiff's Motion to Amend, [dkt. 18], since Plaintiff prefers for the Second Amended Complaint to succeed the Amended Complaint as the operative complaint.

### B.  Plaintiff's Motion to Accept Second Amended Complaint

In his Motion to Accept Second Amended Complaint, [dkt. 20], Plaintiff seeks to add the NRC as a Defendant, improve conformance with the Federal Rules of Civil Procedure, and correct problems with his First Amended Complaint.  [Dkt. 20 at 3.]  Plaintiff explains that, while he

---

[1] The District Judge's Entry Screening Complaint and Order to Show Cause granted Plaintiff "leave to file an amended complaint by no later than Friday, July 15, 2022."  [Dkt. 11.]  However, Plaintiff filed a Motion for Extension of Time on July 14, 2022, [dkt. 12], which the Court granted, making Plaintiff's deadline to file an amended complaint September 13, 2022.  [Dkt. 14].

2

managed to meet the September 13, 2022 deadline by filing his First Amended Complaint, he "was experiencing unusual toxicological reactions of unknown origins from July 29 that lasted until early November." [*Id.*] As a result, Plaintiff requests that his "Second Amended Complaint be accepted into the record in place of his Amended Complaint submitted September 13." [*Id.*] The Magistrate Judge recommends that the District Judge **GRANT** Plaintiff's Motion to Accept Second Amended Complaint, [dkt. 20], and consider his Second Amended Complaint to be the operative complaint for screening purposes.

### C. Screening of Plaintiff's Second Amended Complaint

Plaintiff's Second Amended Complaint, [dkt. 20], like his original Complaint, [dkt. 1], outlines his long history of interactions with the NRC—which began in 1999—and Plaintiff's attempts to correct certain NRC actions and reports that are allegedly detrimental to him. Plaintiff's 140-page Second Amended Complaint expands on many of the same allegations in his original 55-page Complaint. According to Plaintiff, "[l]isting and describing the additional NRC information problems, [zirconium] component failures, and NRC errors[,] as well as expanding on their significance necessarily increases the length of this complaint." [*Id.* at 6.] Despite its length, however, Plaintiff claims that the legal issues raised in his Second Amended Complaint are simple: "Certain NRC Reports and information practices are illegal under the Administrative Procedures Act (APA), the Energy Reorganization Act (ERA), the Atomic Energy Act (AES) [sic], and regulations enacted to implement those laws. The NRC Reports and practices have harmed Plaintiff and could do so again, so they require mitigation." [*Id.* at 7.]

Plaintiff alleges that the NRC, which it tasked with ensuring the "safe use of radioactive material for beneficial civilian purposes while protecting the people and the environment," [*id.* at 9], regulates the use of "safety-critical" zirconium components in nuclear reactors. [*Id.* at 13-14.]

In 1999, while employed with Lambda Research, Inc. ("Lambda")—which according to Plaintiff is a "supplier of [zirconium] texture analysis services" to manufactures of certain nuclear components—Plaintiff alleges that "[zirconium] distortion errors were included in a Lambda report sent to" one of Lambda's clients.  [*Id.* at 22, 29.]  Plaintiff claims that he raised the issues in the report with Lambda's owner and offered suggestions for remedying the errors, but the "owner reacted with extreme anger," and "Plaintiff believed he might be fired immediately."  [*Id.* at 30.] Plaintiff further alleges that, as part of his duties as a lab manager at Lambda, he was required to prepare a Quality Assurance Report ("QAR").  [*Id.*]  Plaintiff claims that he prepared a QAR and included his previously offered recommendations before sending to Lambda's owner for approval. [*Id.*]  Again, Plaintiff claims that Lambda's owner reacted angrily and told Plaintiff to include false edits in his QAR that "concealed the existence of serious Lambda [quality assurance] deficiencies and errors."  [*Id.* at 31.]  Plaintiff claims that, in the following months, Lambda's owner harassed and threatened to terminate Plaintiff "if he discussed the [zirconium] analysis problems or the QAR with anyone."  [*Id.*]  Ultimately, Plaintiff decided to resign "[r]ather than sign the inaccurate QAR or be fired."  [*Id.* at 34.]

However, before resigning, Plaintiff contacted the NRC about the errors and continued to have discussions with the NRC about his concerns over the course of several months.  [*Id.* at 30.] Apparently in response to his concerns, Plaintiff alleges that the NRC prepared a report on texture analysis of zirconium alloy, which Plaintiff refers to as the "Original NRC Report."  [*Id.* at 32.]  In this report, the NRC concluded that the matters raised by Plaintiff were "not a safety concern." [*Id.* at 34.]  Since the Original NRC Report, Plaintiff has continued to raise concerns about nuclear safety with the NRC, including concerns with the Original NRC Report—issued in 1999—and subsequent NRC reports from September 2020 and December 2020.  [*Id.* at 62-64, 73.]  Most

recently, in its December 2020 report, the NRC communicated to Plaintiff that it stands by its conclusions from the Original NRC Report, that it plans to take no further action, and that it would no longer discuss these matters with Plaintiff. [*Id.* at 64-65.] Plaintiff maintains that the NRC's reports are inaccurate, have "specifically harmed" him, and could "create misunderstandings that lead to hazards." [*Id.* 73-74, 119.]

Plaintiff advances several claims in his Second Amended Complaint, [dkt. 20], including that the NRC's reports and actions allegedly violate his right to due process, [*id.* at 74]; influenced his previous lawsuits, [*id.* at 75]; impair his right to free speech, [*id.* at 86]; violate the Administrative Procedure Act, [*id.* at 88]; are arbitrary and inaccurate, [*id.* at 96]; are illegal, [*id.* at 99-100, 108, 110, 112-14, 126, 128]; and are erroneous and deceptive, [*id.* at 105]. Plaintiff further asserts that the NRC improperly discarded records related to Plaintiff's concerns, thereby concealing certain problems. [*Id.* at 132-33.] Plaintiff makes several requests for relief, including asking the Court to order Defendants issue a corrected report, correct certain audit records of Lambda, provide Plaintiff with certain types of information and documents, prohibit the NRC from relying on certain types of information, and respond to Plaintiff's "2021 Information Correction Request." [*Id.* at 134-37.]

Seventh Circuit precedent provides that "[d]istrict courts have the power to screen complaints filed by litigants, prisoners and non-prisoners alike, regardless of fee status." *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 2003). If a complaint fails to state a claim, the Court must dismiss it. *Id.* Under 28 U.S.C. § 1915(e)(2)(B), the Court shall dismiss a complaint if the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *Pro se* complaints are liberally

construed and held "to a less stringent standard than formal pleadings drafted by lawyers." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted).

When deciding whether a complaint states a claim, the Court applies the same standard used for dismissal under Federal Rule of Civil Procedure 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Therefore, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original).

To reiterate, the District Judge previously screened and dismissed Plaintiff's original Complaint because "it appear[ed] that Plaintiff [was] raising a general grievance about a government agency, and such is not a viable claim properly before a federal court." [Dkt. 11 at 5.] The District Judge was unable to discern "any actions taken by the specifically-named Defendants" that harmed Plaintiff's employability, standing in the profession, or general wellbeing, or that caused any other concrete injury to Plaintiff. [*Id.* at 6.] After reviewing Plaintiff's Second Amended Complaint, the undersigned Magistrate Judge concludes that Plaintiff has not remedied these deficiencies and, thus, the Court does not have jurisdiction to adjudicate Plaintiff's claims. Plaintiff appears to be raising a general grievance about the NRC in his Second Amended Complaint—as he did in his original Complaint—and again fails to connect that general grievance with a threatened concrete interest of his own. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555

(1992) (holding that "a plaintiff raising only a generally available grievance about government, unconnected with a threatened concrete interest of his own, does not state an Article III case or controversy").

Like his original Complaint, almost all of Plaintiff's Second Amended Complaint focuses on "specific NRC conduct … from 1999-2022," [dkt. 20 at 10], and on potential public safety issues affecting the nuclear industry and the general citizenry. As the District Judge found in screening that prior Complaint, a general grievance about a government agency is not a valid claim in federal court. *See Freedom from Religion Found., Inc. v. Lew*, 773 F.3d 815, 819 (7th Cir. 2014) (holding that "[a] generally available grievance about government—claiming only harm to … every citizen's interest in proper application of the Constitution and laws is not considered an injury for standing purposes") (internal citation and quotation marks omitted).

Plaintiff attempts to generally claim that he has been personally harmed in several vague and conclusory ways. For example, Plaintiff makes the following allegations: "The NRC Reports and practices have harmed Plaintiff and could do so again, so they require mitigation," [dkt. 20 at 7]; "Defendants' decisions and the actions of NRC staff who work under their authority specifically harmed Plaintiff," [*id.* at 12]; "Defendants' actions deprived Plaintiff of legal protections and violated his Constitutional Rights to Due Process and to Free Speech," [*id.*]; and "[t]he NRC Reports harmed Plaintiff's interests in Federal Courts," [*id.* at 78]. These and other allegations made throughout the Second Amended Complaint are merely conclusory allegations of harm and do not specifically identify conduct from Defendants that concretely harmed Plaintiff—thus, they are not sufficient to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (finding that "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face").

At bottom, it appears that Plaintiff is claiming harm because the NRC's reports contradict his preferred position on certain matters related to the safety of zirconium components in nuclear reactors. But Plaintiff's conclusory allegations that the NRC's reports are wrong amount to nothing more than a general grievance, and the mere fact that the NRC's position on this matter contradicts Plaintiff's preferred position does not constitute legal harm and cannot form the basis of the claims alleged in his Second Amended Complaint. While Plaintiff's Second Amended Complaint expands on his original Complaint, these additional claims offer mere conclusory allegations of harm and ultimately do not change the substance of the claims that were included in his original Complaint and dismissed upon screening by the District Judge. [Dkt. 11.] A "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to [him] that *might* be redressed by the law." *Swanson*, 614 F.3d at 403 (emphasis in original). Because Plaintiff has failed to state a claim on which relief can be granted, the Magistrate Judge recommends that Plaintiff's Second Amended Complaint be dismissed for lack of jurisdiction.

## III. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the District Judge **DENY AS MOOT** Plaintiff's Motion to Amend Complaint, [dkt. 18], **GRANT** Plaintiff's Motion to Accept Second Amended Complaint, [dkt. 20], and **DISMISS** Plaintiff's Second Amended Complaint, [dkt. 20], for lack of jurisdiction.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within 14 days after service will constitute a waiver of subsequent review absent a showing of good cause for that

failure.  The Parties should not anticipate any extension of this deadline or any other related briefing deadlines.

**IT IS SO RECOMMENDED**

Date: 12/12/2022

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

MARK KELLY
10955 South Fork Road
Dillsboro, IN 47018